Michael T. Rogers (MR-8813)
Suzan Arden (SA-4715)
WASSERMAN GRUBIN & ROGERS LLP
1700 Broadway
New York, New York 10019
(212) 581-3320

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BUDRI SRL

                Plaintiff,                        Civil Action No. 14-CV-4075 (JMF)

      v.

                                                (Jury Trial Requested)

CLARK CONSTRUCTION CORP.,

                Defendant.
-------------------------------------------------------x

## CLARK CONSTRUCTION CORP.'S THIRD PARTY COMPLAINT AGAINST VALERY KOGAN AND ROYAL WEST PROPERTIES, LLC

Defendant and third-party plaintiff Clark Construction Corp. ("Clark"), through its attorneys, Wasserman Grubin & Rogers LLP, for its third-party complaint against third-party defendants Valery Kogan and Royal West Properties, LLC ("Royal West") hereby alleges as follows:

### THE PARTIES

1. Defendant and third-party plaintiff Clark is a corporation organized and operated under the laws of the State of New York, with its principal place of business at 99 University Place, New York, New York 10003. Clark is in the business of providing services as a construction manager and general contractor for high-end residential real estate.

2. On information and belief, the plaintiff, Budri Srl ("Budri"), is an Italian business entity (Società responsabilità limitata) with its principal place of business at Via di Mezzo 64, 41037 Mirandola, Italy.

3. Third party defendant Royal West is a foreign corporation organized and operated under the laws of the State of Delaware. It is authorized to do business in New York and, on information and belief, is located c/o Andrey M. Kaydin, 250 Park Avenue, 7th Floor, New York, New York 10177 and at 515 Park Avenue, New York, New York 10022. On information and belief, Royal West is the owner of Units 1007 and 1009 at the Plaza Condominium, One Central Park South, New York, New York 10019.

4. Third party defendant Valery Kogan ("Kogan" or, together with Royal West, "Owners") is a Russian national who, on information and belief, resides in Moscow but has a residence in New York located at Units 1007 and 1009 at the Plaza Condominium, One Central Park South, New York, New York 10019 (the "Property"). On information and belief, Kogan is the beneficial owner of the Property.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the main action pursuant to principles of diversity under 28 U.S.C. §1332(a)(2). Jurisdiction is proper for this third-party action pursuant to Federal Rule of Civil Procedure 14(a), which provides for jurisdiction over third-party claims. Jurisdiction over Clark's additional causes of action against Royal West and Kogan exists on principles of supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this Court pursuant to the propriety of venue in the main action, under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## FACTS APPLICABLE TO ALL CLAIMS

### The Agreement Between Clark and Royal West

7. In or around July, 2011, Royal West, acting for Kogan, entered into an agreement with Clark (the "Agreement") under the terms of which Clark agreed to serve as the "Contractor"

2

on a renovation project at the Property (the "Project"). A copy of the Agreement is attached hereto as **Exhibit A.**

8. As part of the Agreement, Clark agreed to enter into subcontracts on the Owner's behalf with trade contractors to supply materials and install work on the Project. Generally speaking, Clark would select, interview and then retain the subcontractors, subject to the Owner's approval.

9. At the time the parties entered into the Agreement, the total cost of the Project was expected to be $13,094,000 (the "Contract Price"). Clark's total fee, including overhead and profit, was to be $1,190,364. The total sum was set forth in, and subject to, a Budget Summary Sheet, which was costed out based upon a specification package incorporating designs by the project architect, Timothy Bryant Architects ("TBA"), and is attached to the Agreement at Rider No. 1.

10. The Agreement provided, at Article 3, page 4, that this Contract Price was to include only those costs, including subcontractor costs that were "based on the Work described in or inferable from the Contract Documents as they exist at the time of the execution of this Agreement."

11. As alleged in the original Complaint at ¶ 15, at the time the Agreement was entered into, the specifications for the marble "provided for relatively simple designs and materials."

<u>The Marble</u>

12. The marble designs were specified by TBA as part of the specification package for the Project. The Budget Summary Sheet, which was costed based on the specification package, provided that the total cost for Ceramic Tile, Marble and Stone would be $798,984.

3

13. After entering into the Agreement, Clark interviewed and selected the subcontractors, including subcontractors to supply and install the marble for the Project, Pro Design, Inc. and Marble and Stone Creations. The subcontracts were awarded, Clark paid deposits and forwarded the contracts to the Owner.

The Purchase Order with Budri

14. In or around November, 2011, however, the Owners informed Clark that it wished to use Budri to supply and install the marble, and informed Clark that Budri's price was $900,000. The Owners instructed Clark to terminate the agreement with the prior subcontractors and enter into a new purchase order, agreed upon by the Owner directly, with Budri.

15. The Owner negotiated the type of marble and materials to be used by Budri with Budri directly or, on information and belief, through its agent, TBA. Again, as alleged in the original Complaint at ¶ 15, at the time the Agreement was entered into, the specifications for the marble "provided for relatively simple designs and materials."

16. Budri's price of $900,000 was in excess of the $798,984 on the Budget Specification Sheet so Clark prepared, and the Owner agreed to and issued, a change order encompassing the increased price to Clark, Work Order 280-026. A change order is a document requested by a party to a construction contract who has been asked to perform work whose scope was not included in the original contract, and it is issued by the party responsible for payment.

17. Further to the Owner's instructions, Budri and Clark duly exchanged a purchase order in or around December, 2011, (the "Purchase Order", attached as **Exhibit B**).

18. At all relevant times, Budri was fully aware that Clark was not the owner of the Property or the Project, and that Royal West was the owner and Kogan was the beneficial owner.

19. On information and belief, Budri began to prepare the marble in accordance with TBA designs in the specification package.

<u>The Owner Requests Budri to Supply Additional, More Elaborate, and Expensive Marble</u>

20. On information and belief, in or around 2012, both through TBA and Kogan, the Owners instructed Budri directly to supply and install additional, more expensive and elaborate marble for the Project. Budri informed Clark that there had been changes to the scope of the marble work made directly by the Owner, but did not specify what changes or specify an increased price. On further information and belief, the Owners visited Budri's manufacturing plant in Italy in or around October, 2012 and approved the additional, more expensive and elaborate marble directly.

21. When Budri was ready to ship the marble to the Project, it forwarded a request for a change order to Clark. Clark informed Budri that it did not and could not agree to the requested change order but agreed to present it to the Owners for approval.

22. Clark made it clear to Budri that Clark would not be responsible to advance the increase in costs over and above the Purchase Order on the Owners' behalf. At no time did Clark ever agree to amend or revise the Purchase Order to encompass the price of the additional, more expensive and elaborate marble.

23. On information and belief, Budri nonetheless complied with the Owners' instructions and worked on the additional, more expensive and elaborate marble, and continued to do so even when it was aware that it would not be receiving either a change order or an amendment or revision to the original Purchase Order.

24.   Clark repeatedly objected to Budri and to the Owners regarding this and, when Budri sent invoices to Clark reflecting the costs of the additional, more expensive and elaborate marble, Clark continued to object.

25.   On Budri's behalf, Clark did request that the Owners issue a change order to cover the amounts Budri demanded, but the Owners refused to do so. Clark duly conveyed the Owners' refusals to Budri.

Budri Commences this Lawsuit

26.   On or around June 5, 2014, Budri commenced this lawsuit against Clark, seeking to recover what it alleges were the costs of the additional, more expensive and elaborate marble. A copy of Budri's complaint is attached as **Exhibit C.**

27.   Clark duly filed an answer, denying Budri's claims and asserting certain affirmative defenses. A copy of Clark's answer is attached as **Exhibit D.**

Royal West Fails to Pay Clark in Full

28.   At all relevant times, and in all ways, Clark fulfilled all of its obligations under the Agreement.

29.   During the Project, Clark agreed to, and the Owners approved, $878,035 in Change Orders. This brought the total Contract Price, not including the amounts the Owners had agreed to separately with Budri, to $13,972,035.

30.   Under the terms of the Agreement and the Change Orders, Clark submitted certain Requests for Payment totaling $13,972,035.

31.   Despite due demand, Royal West has failed and refused to make payment of the full amount it owes to Clark, and has only paid $13,404,505. There is therefore an outstanding balance under the Agreement and the Change Orders of $ 567,530.

32. Clark has continued to provide work on the Project, most recently in August, 2014.

FIRST CAUSE OF ACTION

33. Clark repeats and realleges each and every allegation contained in paragraphs 1 through 32 of the Complaint, as if set forth in full herein.

34. At all times relevant, in its dealings with Budri, Clark has acted as agent for the Owners of the Project and the Property.

35. As Budri was aware, none of the marble or materials or work supplied by Budri to the Project was for the benefit of Clark, but rather for the benefit of the Owners of the Project and the Property.

36. Article 3, page 4 of the Agreement provides that the Contract Price under the Agreement was to include only those costs, including subcontractor costs that were "based on the Work described in or inferable from the Contract Documents as they exist at the time of the execution of this Agreement."

37. On information and belief, the Owners directly requested Budri to provide additional, more elaborate and expensive marble which exceeded the marble encompassed by its Purchase Order, or described in the original Contract Documents, including the specification package and the Budget Specification Sheet.

38. The Agreement did not encompass the cost of the additional, more elaborate and expensive marble. Despite due demand, Royal West has not paid Budri or Clark for the costs of the additional, more elaborate and expensive marble, nor has it agreed to a change order to encompass the cost.

39. Clark has performed each of its obligations under the terms of its Agreement with Royal West. Accordingly, to the extent that Clark is held liable to Budri pursuant to the original Complaint on any theory for the cost of the additional, more elaborate and expensive marble, this constitutes a breach of contract between Clark and Royal West and Clark will be damaged thereby. Royal West is liable to indemnify Clark for the full amount of such liability, in addition to fees, costs and expenses.

## SECOND CAUSE OF ACTION

40. Clark repeats and realleges each and every allegation contained in paragraphs 1 through 39 of the Complaint, as if set forth in full herein.

41. At all times relevant, in its dealings with Budri, Clark has acted as agent for the Owners of the Project and the Property.

42. As Budri was aware, none of the marble or materials or work supplied by Budri to the Project was for the benefit of Clark, but rather for the benefit of the Owners of the Project and the Property.

43. On information and belief, Kogan, acting in his own right and for his own benefit, and for the benefit of Royal West, directed Budri to provide additional, more elaborate and expensive marble which exceeded the marble encompassed by its Purchase Order, or described in the original Contract Documents, including the specification package and the Budget Specification Sheet.

44. Kogan directly approved the additional, more elaborate and expensive marble on a visit to Budri's plant.

45. Budri supplied the additional, more elaborate and expensive marble to the Project without receiving payment from Kogan or Royal West.

46. Neither Kogan nor Royal West has paid Clark for the additional, more elaborate and expensive marble.

47. Accordingly, to the extent that Clark is held liable to Budri pursuant to the original Complaint on any theory for the cost of the additional, more elaborate and expensive marble, such liability will unjustly enrich Kogan, as beneficial owner, and Royal West. In justice and good conscience they should not be permitted to retain such benefit without due compensation to Clark.

48. Therefore, Kogan and Royal West are liable to indemnify Clark for the full amount of such liability, in addition to fees, costs and expenses.

## THIRD CAUSE OF ACTION

49. Clark repeats and realleges each and every allegation contained in paragraphs 1 through 48 of the Complaint, as if set forth in full herein.

50. In or around July, 2011, Royal West entered into the Agreement with Clark under the terms of which Royal West agreed to pay a total of $13,094,000 together with agreed-upon Change Orders in the amount of $878,035, in exchange for Clark's services as Contractor on the Project.

51. Clark fulfilled all of its obligations to Royal West under the Agreement and the agreed-upon Change Orders.

52. Clark's most recent work on the Project was in August, 2014.

53. Royal West has made payment under the Agreement and agreed-upon Change Orders in the amount of $13,404,505. Despite due demand, however, Royal West has breached the Agreement by, among other things, failing and refusing to pay Clark the remaining $567,530 owed to it.

54. Clark has been damaged in an amount to be determined at trial, but believed to be in excess of $567,530.

## FOURTH CAUSE OF ACTION

55. Clark repeats and realleges each and every allegation contained in paragraphs 1 through 54 of the Complaint, as if set forth in full herein.

56. To the extent that it is determined that the Agreement and agreed-upon Change Orders do not apply or are not enforceable, Royal West and Kogan have been unjustly enriched by Clark's work on the Project at Clark's expense.

57. Clark provided extensive materials and services to Royal West and Kogan in the expectation that it would be paid for such materials and services, but Royal West and Kogan have retained the benefit of the materials and services and have not compensated Clark for them.

58. Clark would not have provided such materials and services to Royal West and Kogan had it known that Royal West and Kogan would not pay for it in full. In justice and good conscience they should not be permitted to retain such benefit without due compensation to Clark.

59. Clark has been damaged in an amount to be determined at trial but believed to be in excess of $567,530.

## FIFTH CAUSE OF ACTION

60. Clark repeats and realleges each and every allegation contained in paragraphs 1 through 59 of the Complaint, as if set forth in full herein.

61. Pursuant to the Agreement and the agreed-upon Change Orders, commencing on April 1, 2013, and continuing for more than a year thereafter, Clark duly sent to Royal West

Statements and Invoices properly reflecting the amounts due to it from Royal West for its work on the Project.

62. Royal West paid certain of the Statements and Invoices, through September 1, 2013.

63. On October 1, 2013 and for several months thereafter, including on June 24, 2014 and November 12, 2014, Clark continued to properly invoice Royal West for the remaining $567,530 owed to it. These Statements and Invoices correctly reflected the balance due to Clark under the Agreement and agreed-upon Change Orders.

64. Royal West retained these Statements and Invoices without objection and for an unreasonable period of time but has not made payment on them.

65. By reason of the foregoing, Royal West has accepted the Statements and Invoices as correct, and an account stated was thereby created between Royal West and Clark in the amount of $567,530.

66. Clark has been damaged in an amount to be determined at trial but believed to be in excess of $567,530.

WHEREFORE, Clark demands judgment as follows:

On its First Cause of Action, against Royal West, to the extent that Clark is found liable to Budri pursuant to the original Complaint, indemnification for all sums deemed to be payable to Budri;

On its Second Cause of Action, against Kogan and Royal West, to the extent that Clark is found liable to Budri pursuant to the original Complaint, indemnification for all sums deemed to be payable to Budri;

On its Third Cause of Action, against Royal West, damages in an amount to be determined at trial, but believed to be in excess of $567,530;

On its Fourth Cause of Action, against Royal West and Kogan, damages in an amount to be determined at trial, but believed to be in excess of $567,530;

On its Fifth Cause of Action, against Royal West, damages in an amount to be determined at trial, but believed to be in excess of $567,530;

Together with interest, fees and costs, and such other and further relief as to this Court seems just and fitting.

Dated: New York, New York
      December 4, 2014

                    WASSERMAN GRUBIN & ROGERS, LLP

                    By: _____
                        Michael T. Rogers (MR-8813)
                        Suzan Arden (SA-4715)
                    1700 Broadway
                  New York, NY 10019
                  (212) 581-3320

                  *Attorneys for Defendant Clark Construction Corp.*